IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| THE TREE HAUS TAVERN, LLC | § | Case No. 24-51589-CAG |
| Debtor | § | |

**LOGICAL INVESTMENTS, LLC, BRENT SCHUMANN, AND DENISE SCHUMANN MOTION TO MODIFY DATES AND DEADLINES ASSOCIATED WITH THE DEBTOR'S PROPOSED PLAN OF REORGANIZATION**

TO THE HONORABLE CRAIG A. GARGOTTA, CHIEF BANKRUPTCY JUDGE:

COME NOW Logical Investments, LLC ("Logical"), and Brent Schumann and Denise Schumann (together, the "Schumanns"), secured creditors of the above-captioned Debtor, and parties-in-interest in the above-captioned chapter 11 bankruptcy case, and file their Motion to Modify Dates and Deadlines Associated with the Debtor's Proposed Plan of Reorganization ("Motion"), and would respectfully show as follows:

**INTRODUCTION**

1.     The Tree Haus Tavern, LLC ("Debtor") has proposed a Plan of Reorganization ("Proposed Plan") [Dkt. 71]. On November 21, 2024, the Court entered its Order on Debtor's Motion to Set Deadlines Pursuant to Interim Rule 3017.2 ("Plan Deadline Order") [Dkt. 74]. The Plan Deadline Order provides a deadline for objection to the Proposed Plan of January 3, 2025, with a confirmation hearing set on January 13, 2025. Logical and the Schumanns will object to the Proposed Plan. Logical and the Schumanns also intend to conduct discovery related to the Proposed Plan. The dates and deadlines in the current Plan Deadline Order do not provide Logical and the Schumanns with adequate time to conduct plan discovery in advance of the currently scheduled January 13, 2025 confirmation hearing. Thus, Logical and the Schumanns request that the Court modify the dates and deadlines associated with the Proposed Plan, to provide Logical and the

Schumanns, and any other parties in interest, with adequate time to conduct plan discovery in advance of a confirmation hearing.

## **FACTUAL BACKGROUND**

2.      On August 21, 2024 (the "Petition Date") the Debtor filed a voluntary petition under Chapter 11, subchapter V, of Title 11 of the United States Code, 11 U.S.C. §101, *et seq*. (the "Bankruptcy Code").

3.      The Debtor filed no "first day" motions with its petition, or thereafter.

4.      Prior to the Petition Date, the Debtor and Logical entered into a Commercial Lease Agreement (as amended, the "Lease"), for the Debtor's use of certain real property in Spring Branch, Texas.  Logical has also made loans to the Debtor.  The Debtor's obligations under the Lease and certain of the loans are secured by substantially all of the Debtor's assets.

5.      Also, prior to the Petition Date, the Schumanns made secured loans to the Debtor, perfected by a pre-petition filed UCC-1 financing statement with liens upon:  "All the non-exempt property of the Debtor, wherever located, and now owned or hereafter acquired."

6.      Logical and the Schumanns filed a motion to prohibit or condition use or cash collateral, and on October 16, 2024, the Court entered its Final Agreed Order on Continued Use of Cash Collateral [Dkt. 51].

7.      On November 19, 2024, the Debtor filed its Proposed Plan.

8.      Also, on November 19, 2024, the Debtor filed its Motion to Set Deadlines Pursuant to Interim Rule 3017.2 ("Motion to Set Deadlines") [Dkt. 72].  By the Motion to Set Deadlines, the Debtor requested that the Court set dates and deadlines related to the Proposed Plan.

9. The Plan Deadline Order provides that creditors must submit ballots and objections to the Proposed Plan by January 3, 2025. The Plan Deadline Order further provides that a confirmation hearing on the Proposed Plan will be conducted by the Court on January 13, 2025, at 10:00 AM.

10. As noted above, Logical and the Schumanns will object to the Proposed Plan.

11. Logical and the Schumanns are continuing their review of the Proposed Plan, but several aspects of the Proposed Plan appear to render the plan unconfirmable. For example, the Proposed Plan, at 8.2(b), states: "Unsecured Claims will receive full payment under the Plan." This provision of the Proposed Plan also states that in a hypothetical Chapter 7 liquidation, all unsecured claims "would be paid in full." Neither statement appears to be plausible based upon the Debtor's historical and projected revenues.

12. Pursuant to 11.1 of the Proposed Plan, the Debtor proposes to assume its Lease with Logical. Section 365(b)(1) of the Bankruptcy Code provides that a debtor must cure, or provide "adequate assurance that the trustee will promptly cure," monetary defaults under a lease to be assumed. The Debtor acknowledges no cure obligations under its Lease with Logical. Article 11.1 of the Proposed Plan instead has this statement: "If no agreement has been reached regarding the cure of a lease arrearage (on a lease being assumed), any such pre-petition lease arrearages will be added to the end of the lease term." The Debtor has made no proposal to Logical regarding amounts necessary to cure the Debtor's obligations under the Lease. In any event, the Debtor's suggestion that it remove its lease cure obligations to the "end of the lease term" is not "prompt," as required by § 365 of the Bankruptcy Code.

13. On October 30, 2024, Logical filed its proof of claim, Claim No. 10 ("Logical Proof of Claim"). In the Logical Proof of Claim, Logical set forth known amounts which must be cured in conjunction with the proposed assumption of the Logical Lease. In the Logical Proof of Claim,

Logical also identified certain repairs which must be undertaken for the Debtor's leased property, and which are the Debtor's responsibility under the Lease. Logical is obtaining estimates for such repairs. The Debtor has not been cooperative in permitting inspection of the leased property, most recently denying access to a Logical vendor scheduled to inspect the leased property on November 25, 2024. Logical is attempting to reschedule the inspection at this time. Logical will not be able to amend its proof of claim, and assert additional amounts as part of its Lease cure claim, without the expected repair and remediation estimates from its vendors.

14. The Proposed Plan also contains issues of concern regarding proposed insider compensation—including, but not limited to, an undefined right to provide the Debtor's insiders with salary and wage increases "over the life of the Plan." Proposed Plan art. 7.4. At art. 5.7 of the Proposed Plan, the Debtor proposes to devote 75% of its "disposable income" to the payment of unsecured creditors over the plan term, with the retention of 25% of such income "reserved" for general operating expenses. This provision appears to be contrary to § 1191(c)(2) of the Bankruptcy Code.

15. The Debtor has been less than transparent regarding its post-petition finances. For example, with the Debtor's September MOR [Dkt. 55], the Debtor attached bank statements to the MOR, when the MOR form itself requires exhibits showing itemized receipts and disbursements— the form specifically states: "Do not attach bank statements in lieu of" the required exhibits. The bank statements themselves appear to show questionable payments by the Debtor, including what appears to be an automobile payment for one of the Debtor's individual insiders. According to the Debtor's schedules, the Debtor does not own an automobile.

16. Following instructions from the US Trustee (and the Court), it appears that the Debtor opened a DIP account at Jefferson Bank on October 7, 2024, 47 days after the Petition Date. *See*

October MOR [Dkt. 78].  Upon review of the Debtor's October MOR, the Jefferson Bank account is window-dressing, with very little transaction activity in October.  It appears the Debtor did not close its pre-petition bank account with RBFCU, and according to the October MOR, the vast majority of the Debtor's business transactions continue to be routed through the RBFCU account, including another car payment.  The Debtor's October MOR shows dozens of transactions through the RBFCU account throughout October, including on October 31, 2024.

17.    The foregoing issues, which are representative and not exhaustive, demonstrate that there are legitimate issues with the good faith and feasibility of the Proposed Plan.  Logical and the Schumanns are entitled to discovery on these issues, and other matters related to the Proposed Plan.

18.    This week, undersigned counsel conferred with Debtor's counsel regarding an extension of the dates and deadlines associated with the Proposed Plan.  Debtor's counsel suggested that the Debtor would endeavor to informally provide Logical and the Schumanns with "reasonable" documentation and other information related to the Proposed Plan.  Logical and the Schumanns are not opposed to working with Debtor's counsel informally, but in light of what has already transpired in this case, they cannot rely on the Debtor's willingness to provide documentation and other information on an informal basis.

19.    For example, following the Petition Date, Logical repeatedly requested that the Debtor provide proof that Logical was an additional named insured on the Debtor's general liability insurance policy, as required by the Lease.  Such documentation was never provided to Logical.  Following the Court's entry of the Order Approving Authority to Enter into Premium Finance Agreement [Dkt. 62], Logical requested that the Debtor provide copies of the actual insurance policies which were financed by the Debtor.  To date, the Debtor has refused to provide copies of the actual insurance policies.  At the Debtor's 341 Meeting, on September 20, 2024, Vance Mendes, on

behalf of the Debtor, testified that he had balance sheets and profit and loss statements from 2022 and 2023, and that he would send them to his counsel. Undersigned counsel requested that Debtor's counsel provide the balance sheets and profit and loss statements from 2022 and 2023—the Debtor did not file federal tax returns for 2022 or 2023. Debtor's counsel did not provide the requested financial information until *after* the November 19, 2024 deadline for Logical to file a dischargeability complaint. As noted above, the Debtor has filed incomplete information with its MORs. Logical has requested that the Debtor supplement with the detail required in the MOR form, and the Debtor has failed to do so.

20.     Based upon the foregoing, Logical and the Schumanns cannot reasonably rely on the Debtor's willingness to share documentation and information informally.

### REQUEST FOR EXTENSION

21.     Logical and the Schumanns request that the confirmation hearing on the Debtor's Proposed Plan be reset to the last week of March, 2024, or the Court's first availability thereafter. Logical and the Schumanns request that the remaining dates in the Plan Deadline Order be extended for 60 days. In the interim, Logical and the Schumanns will have the opportunity to continue their efforts to complete inspections of the Debtor's leased property, amend their claims as necessary, object to the Debtor's Proposed Plan as necessary, and to conduct discovery related to the Debtor's Proposed Plan.

22.     In order to further expedite these matters, Logical and the Schumanns request that the Court grant them authority to propound discovery on the Debtor prior to the filing of their Plan Objection, upon the entry of an order approving this Motion. In this manner, the discovery process may proceed without the need for the initiation of a contested matter by the filing of a formal objection to the Proposed Plan. Should the Debtor wish to provide information and documentation

in response to the Logical and Schumann discovery requests prior to the dates set forth in the Federal Rules of Bankruptcy Procedure, the Debtor will be free to do so to further expedite the process.

23.     Logical and the Schumanns request the foregoing extensions to conduct discovery on the Debtor's Proposed Plan, so that they, and any other party in interest, may obtain adequate information regarding good faith, feasibility, and compliance with other provisions of the Bankruptcy Code, in relation to the Debtor's Proposed Plan.

WHEREFORE, PREMISES CONSIDERED Logical Investments, LLC, Brent Schumann and Denise Schumann respectfully request that this Court grant this Motion, and that the movants have such other relief to which they may show themselves to be justly entitled.

Dated:  December 4, 2024

Respectfully submitted,

**SPROUSE LAW FIRM**

901 Mopac Expressway South
Building 1, Suite 300
Austin, TX 78746
(512) 658-1915—Telephone
/s/ *Marvin E. Sprouse III*
Marvin E. Sprouse III
State Bar No. 24008067
Email: msprouse@sprousepllc.com

**COUNSEL FOR LOGICAL INVESTMENTS, LLC, BRENT SCHUMANN, AND DENISE SCHUMANN**

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on the 4th day of December 2024, I caused a true and correct copy of the foregoing to be served via the Court's CM/ECF Electronic notification system upon all parties registered for same, and/or via regular U.S. Mail, postage prepaid upon the parties listed below:

The Tree Haus Tavern, LLC
15000 SH 46, Unit 900
Spring Branch, TX 78070

William R. Davis, Jr.
Langley & Banack, Inc.
745 E. Mulberry Ave, Ste 700
San Antonio, TX 78212-3172
*Debtor's Counsel*

Brad W. Odell
Mullin Hoard & Brown, LLP
1500 Broadway, Suite 700
Lubbock, TX 79401
*Subchapter V Trustee*

McKenzie Capital, LLC
3390 Mary St.
Miami, FL 33133

Mulder Fire Protection
5807 La Colonia
San Antonio, TX 78218

Texas Comptroller of Public Accounts
10010 San Pedro Ave., Unit 410
San Antonio, TX 78216

Overton Funding
365 Kingston Ave., Ste 1
Brooklyn, NY 11213

Fox Business Funding
803 S. 21st Ave.
Hollywood, FL 33020

Internal Revenue Service
P.O. Box 7346
Philadelphia, PA 19101-7346

DirectTV
1855 Morse Rd.
Columbia OH 43229

Bookkeeping by Val
20540 Hwy. 46 W.
Spring Branch, TX 78070

LOL Liquors
1208 FM 78, Unit A
Schertz, TX 78154

Quench USA, Inc.
630 Allendale Rd., Ste 200
King of Prussia, PA 19406

TABC
P.O. Box 13127
Austin, TX 78711

Comptroller of Public Accounts
P.O. Box 149355
Austin, TX 78714

United States Trustee – SA12
US Trustee's Office
615 E. Houston, Suite 533
San Antonio, TX 78205-2055

/s/ *Marvin E. Sprouse III*
Marvin E. Sprouse III